UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JOHN WELCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:18-CV-0036-ERW |
| ) | |
| ANDREW M. SAUL, Commissioner ) | |
| of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the application of John Welch ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.* and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff filed a brief in support of the Complaint (ECF 21) and Defendant filed a brief in support of the Answer (ECF 26).

### I. PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI under Titles II and XVI of the Social Security Act on May 27, 2015 (Tr. 210-215). Plaintiff was initially denied relief on July 30, 2015, and on August 31, 2015, he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 155-161). After a hearing, by a decision dated April 19, 2017, the ALJ found Plaintiff was not disabled (Tr. 48-59). Plaintiff filed *Request for Review of Hearing Decision* on

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

April 27, 2017 (Tr. 209). On April 5, 2018, the Appeals Council denied Plaintiff's request for review (Tr. 1-4). Plaintiff appealed to the United States District Court for the Eastern District of Missouri on May 24, 2018 (ECF 1). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019, and Plaintiff has not engaged in substantial gainful activity since June 4, 2014, the alleged onset date of his disability (Tr. 50). The ALJ found Plaintiff has the severe impairments of degenerative disc disease with lumbar spondylosis, and failed back syndrome (Tr. 51). The ALJ found no impairment or combination of impairments which meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 52).

The ALJ conducted a hearing with Plaintiff, his counsel, and a vocational expert, Mary Schauwecker, on January 24, 2017 (Tr. 101). Plaintiff testified he possesses a current driver's license and drives two or three times a week (Tr. 104). Plaintiff suffered an injury in June 2014 which put him on work restrictions, and only returned to work in mid to late October (Tr. 105). He was terminated by his employer in November 2014 (Tr. 104-106).

Plaintiff is unable to sit for "very long" before he experiences numbness in his legs (Tr. 107). He testified he is only able to stand about ten or fifteen minutes until his back hurts, and his legs cramp up and fall asleep (Tr. 109). Plaintiff can walk about a half a mile before he has to sit down (Tr. 109). He testified he lays down approximately 60% of the day either in a bed or on a recliner (Tr. 116).

Plaitniff has tried physical therapy but testified the physical therapist released him and told him "he [could] do no more for [him] (Tr. 109). Palintiff takes medication for anxiety and depression including Xanex, Lexapro, and Gabapentin (Tr. 113). Plaintiff has also been prescribed Oxycodone for pain (Tr. 113). He testified his medications have side effects including making him tired, and making it difficult for him to concentrate and he felt he was being "pushed pills" by doctors Gessling and Rasmussen that "made me crazy" (Tr. 115).

Plaintiff testified he is unable to bend over to touch his knees, and cannot kneel down to pick something up without falling (Tr. 116). He has had difficulty balancing since his back surfer (Tr. 116).

Plaintiff testified he suffers from anxiety which causes him to get hot, sweaty, and worked-up where he has to go sit by himself to calm down (Tr. 117). He experiences these symptoms approximately two to three days a week (Tr. 117). Plaintiff experiences depression because he is not able to hold down a job and support his family, which makes him feel "worthless" (Tr. 117).

The vocational expert, Mary Schauwecker, testified Plaintiff has past work as a production worker at a trailer company, a builder at a door shop, a laborer, a maintenance worker for food industry, and as a welder (Tr. 119). Ms. Schauwecker testified Plaintiff cannot perform any of his past work; however, he is able to work as an information clerk, an addresser, and a document preparer (Tr. 119-132). The vocational expert also noted although the information clerk position was light exertion, it could be performed by Plaintiff because it involved negligible lifting, allowed for a sit/stand option (Tr. 119-132).

After considering the entire record, including Plaintiff's testimony, the ALJ determined Plaintiff has the Residual Functioning Capacity ("RFC") to perform sedentary work, except he

requires a sit/stand option which working which allows a change in position every thirty minutes for a few minutes at a time while remaining at the workstation (Tr. 53). The ALJ noted diagnoses for cholelithiasis, diverticulosis, and anthersclerosis, but concluded the record does not indicate these impairments cause more than minimal vocationally relevant functional limitations, and therefore, the conditions are not severe (Tr. 51). The ALJ also found Plaintiff suffered from medically determinable mental impairments including depressive disorder, anxiety disorder, panic disorder, and polysubstance dependence, but these do not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities, and are therefore not sever (Tr. 51).

The ALJ found Plaintiff is unable to perform any past relevant work (Tr. 57). The ALJ found there are jobs which exist in significant numbers in the national economy Plaintiff can perform, including work as an information clerk, an addresser, and a document preparer (Tr. 58). Thus, the ALJ's conclusion for Plaintiff was "not disabled" (Tr. 59).

Plaintiff appeals, arguing the ALJ failed to properly consider the opinions of five different medical sources, and erroneously concluded Plaintiff could perform sedentary work.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner must follow a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, first the claimant cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20

C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two, only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of these impairments, then the claimant is *per se* disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past to determine if the claimant can perform any past relevant work. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy which can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3.

"The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart,* 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed, if it is supported by substantial evidence. *Clark v. Heckler,* 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record *de novo*. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough, so a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision, which is supported by substantial evidence, is not subject to reversal, merely because substantial evidence may also support an opposite conclusion, or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff argues the ALJ failed to properly consider the opinions of five different medical sources leading to an erroneous conclusion Plaintiff could perform sedentary work.

Medical opinions are given weight according to the guidelines outlined in the Title 20 of the Code of Federal Regulations for claims filed before March 27, 2017. *See* 20 C.F.R § 404.1527. More weight is given to medical opinions from treating sources. *Id.* If a "treating source's medical opinion on the issue(s) of the nature and severity of [an] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [Plaintiffs] case record, we will give it controlling weight." 20 C.F.R. § 404.1527. "A treating physician's opinion, however, 'does not automatically control or obviate the need to evaluate the record as a whole.'" *Nowling v. Colvin*, 813 F.3d 1110, 1122–23 (8th Cir. 2016) *quoting Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2001). An ALJ is "not required to rely entirely on a particular physician's opinion or choose

between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) *citing Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

"If a treating physician's opinion is not given controlling weight, then the ALJ must review various factors to determine how much weight is appropriate." *McRoberts v. Berryhill*, No. 4:17 CV 1447, 2018 WL 2335746, at *9 (E.D. Mo. May 23, 2018) *citing Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016). If the opinion is not given controlling weight, factors which must be considered include length of treatment relationship and frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization and other factors brought to the attention of the ALJ are considered. 20 C.F.R. § 404.1527 (c). The ALJ is required to "give good reasons" for the weight given to a treating sources medical opinion. 20 C.F.R. § 404.1527(c)(2).

In his opinion, the ALJ outlines Plaintiff's statements and testimony regarding his symptoms and medical impairments,

> [Plaintiff] made the following allegations: he is unable to work due to back and leg pain, leg numbness, anxiety, depression, and problems reading. He suffered a work injury on the alleged onset date and worked on and off with restrictions until he stopped working completely in November 2014. He experiences back pain, leg cramping, leg numbness, and imbalance that cause difficulties with sitting, standing, bending, kneeling, sleeping, and doing anything, but he has not had any falls. He has 80 percent bad days, but can do some walking on good days.
>
> As for the claimant's treatment, he reported that he was temporarily better after surgery, but worsened after undergoing a functional capacity evaluation a few weeks after surgery. Although he was released from physical therapy in mid-2015, it did not help or improve his symptoms, while his physical therapist told him it would not make him better. He has tried many medications with problems taking some of them because they were not effective or made him "sick" and "crazy." His current medications cause side effects of sleepiness and difficulty concentrating. He is most comfortable lying down with his left leg on a pillow. As for his daily activities, he was previously able to walk two miles a day, but he worsened during physical therapy and after his functional capacity evaluation in April 2015. He can drive short distances 2-3 times a week, but he lies down 60 percent of the day. He can sit 5-10 minutes at a time, stand 10-15 minutes at a time, and walk half a mile at a time (Tr. 53-54).

In his opinion, the ALJ then concludes Plaintiff's medically determinable impairments could be expected to cause alleged symptoms; however, Plaintiff's statements regarding intensity, persistence, and limiting effects are not consistent with the medical evidence in the record (Tr. 54). Next, the ALJ considers the medical documentation from Plaintiff's treating physicians, and affords the opinions weight.

First, the ALJ affords *great* weight to Dr. Dennis Abernathie, Plaintiff's treating orthopedic surgeon (Tr. 56). The ALJ explains the reasons he afforded *great* weight to Dr. Abernathie's opinion, including statements by Dr. Abernathie Plaintiff could "probably do more but for his lack of consistent effort," and Plaintiff "could nonetheless perform work with at least intermittent sitting, standing, and walking, with a 10 pound restriction" (Tr. 56). The ALJ noted those statements were consistent with Dr. Abernathie's "largely normal exams after surgery," as well as Plaintiff's imaging, exams, and daily activities (Tr. 56). The ALJ affords *little* weight to Dr. Abernathie's statements Plaintiff could not work from December 2014 to February 2015, because they were temporary and did not address the claimant's subsequent improvement with surgery (Tr. 56).

The care and treatment of Plaintiff by Dennis Abernathie, M.D., began on September 10, 2014 and continued until Plaintiff was discharged from his care May 11, 2015. Dr. Abernathie had more time and experience with Plaintiff than any other physician or medical care provider. His treatment notes are instructive in according weight to the testimony and statements of Plaintiff.

On September 10, 2014, Dr. Abernathie encouraged Plaintiff to exercise, adopt a healthy lifestyle, and stop smoking (Tr. 404). On September 23 2014, Plaintiff's symptoms and complaints of low back pain radiating to his right leg were unchanged and were made worse with

9

physical therapy. Dr. Abernathie noted "The patient consumes alcohol daily," and denies alcohol or drug addiction. Evaluation of the lower back and lower extremities was unremarkable. The lumbar spine exam revealed some tenderness over the L5-S1 fact joints with some spasms, but strength, sensation, and gait were normal. Dr. Abernathie prescribed aspirin, Medral, Dosepak and Cylobendapine, and advised Plaintiff to stop smoking. Dr. Abernathie also equipped Plaintiff with an Aspen Qicckdraw brace (Tr 405-07).

On October 1, 2014, Plaintiff reported feeling zero percent better than the last visit. Symptoms worsened with physical therapy. Plaintiff continued to drink alcohol and smoke daily. He wore the Aspen brace, but reported it was ineffective. Dr. Abernathie diagnosed lumbago and ordered a whole body bone SPECT scan (Tr. 408-09).

The bone scan conducted on October 7, 2014 was "perfectly normal." Plaintiff continued to have pain with flexion, but the lumbar spine examination showed good strength. Dr. Abernathie opined that Plaintiff needed to become healthier, and they discussed smoking restriction, alcohol limitation, and stress reduction. Dr. Abernathie notes, "[Plaintiff] has agreed with me that limitations such as working above his knees, shoulders, 10 pounds lifting and sit and stand and walk intermittently would be possible." Although Plaintiff reported he was afraid to go back to his old job because of the possibility of reinjury, Dr. Abernathie opined Plaintiff needed to return to some kind of gainful employment (Tr. 410-12).

On October 21, 2019, Plaintiff reported worsening symptoms. Dr. Abernathie again advised Plaintiff to discontinue daily alcohol use and smoking. An MRI showed age-related information but not shown substantial inflammation suggesting injury. Dr. Abernathis again advised, "I think this patient needs to return to some type of gainful employment." He further noted that Plaintiff had returned to the work force with restrictions set by Dr. Abernathie (Tr.

10

414-16). On October 30, 2014, the physical therapist informed Dr. Abernathie that Plaintiff had canceled several appointments due to family issues (Tr. 417).

A November 5, 2014, Plaintiff called to request pain medication and was informed the office could not, because of a law change, call in for Schedule II drugs (Tr. 418). However, a prescription for Ultram was called-in the patient's pharmacy (Tr. 419). On November 18, 2014, Dr. Abernathie noted illotibial band pain and left testicular pain. He took Plaintiff off work and replaced the activity with physical therapy for a brief time. He ordered a discogram to determine whether there was pathology at L5-S1 that was symptomatic and would require a fusion (Tr. 420-21).

The date of Plaintiff's surgery is reported as November 19, 2014; however, surgery was not conducted on that date. The treatment notes disclosed the extent of Plaintiff's smoking, excessive alcohol daily use and claimed former illicit drug use. The record shows a bone scan was unremarkable. Dr. Abernathie noted, "[Plaintiff] becomes a problem with his subjective state. Patient's surgical consent to proceed" (Tr. 422-24).

On December 9, 2014, Dr. Abernathie and Plaintiff discussed the discogram and the proposed surgery. While Plaintiff complained of more numbness down the lateral aspect of his right leg, Dr. Abernathie noted Plaintiff's back was less tender and his mobility a little better. Dr. Abernathie advised there was a substantial increased complication rate in smokers and recommended Plaintiff schedule his surgery for 6 weeks after he stopped smoking. Dr. Abernathie noted if Plaintiff could "work in an office setting, where he was released for sitting and standing, with minimal lifting and with knee to shoulder range of activity, he may be functional" (Tr. 426-427).

On January 13, 2015, Plaintiff reported cutting down smoking (Tr. 429-30). Fusion surgery was performed February 12, 2015, and during a follow up appointment February 25, 2015, Plaintiff reported his leg pain was gone. Range of motion was normal in all tested areas upon lumbar spine examination. Gait and station were normal, and Plaintiff ambulated without assistance. This was the first time Dr. Abernathie saw Plaintiff smile. Plaintiff was happy about the early results and was doing a lot of walking and stretching (Tr. 434-35).

On March 30, 2015, Dr. Abernathie noted Plaintiff looked great and was not complaining of leg pain. Dr. Abernathie ordered physical therapy to encourage Plaintiff's flexibility and work toward activities for which he can be employed. Plaintiff reported being able to walk two miles (Tr. 436).

On May 11, 2015, Plaintiff stated his leg pain was gone but reported pain at the incision site. He had more flexibility from doing the PT. Dr. Abernathie noted Plaintiff expressed no specific concerns. Plaintiff was smoking again and working toward an ability to work. Plaintiff expressed a plan to go to school or get disability. Dr. Abernathie did not believe disability made sense and opined Plaintiff was definitely capable of gainful employment with an option to sit, stand and walk intermittently, as well as a 10 pound lifting restriction (Tr. 438-39).

The Court finds that Dr. Abernathie's notes suggest good reasons for giving more weight to his records and statements in support of the Commissioner's conclusions. On Plaintiff's very last visit with Dr. Abernathie, Plaintiff cited no cause as to why he could not seek and maintain employment, yet his response was a plan to seek disability (Tr. 438).

The ALJ provided good reasons for his determinations regarding Dr. Abernathie's conclusions including the consistency between Dr. Abernathy's opinion and the overall medical evidence in the record.

12

The ALJ then affords *little* weight to the opinions of Dr. P. Brent Koprivica, an independent medical examiner, who stated Plaintiff was probably permanently totally disabled (Tr. 56). The ALJ explains Dr. Koprivia's conclusion is based on a one-time evaluation where Plaintiff was not taking his normal pain medications, only over-the-counter pain medication, and a determination of disability was reserved for the Commissioner, and not an independent medical examiners. The ALJ concludes Dr. Koprivia's opinion "did not correspond with the vast majority of [Plaintiff's] post-operative exams showing intact strength, range of motion, and gait (Tr. 56). The ALJ provided "good reasons" for affording little weight to Dr. Koprivica's opinion including the fact his opinion was based on a one-time evaluation.

The ALJ affords *limited* to *partial* weight to mid-2014 medical statements by Dr. Forest Conley, and Dr. Joel Jeffries. The ALJ affords them *limited* to *partial* weight because Plaintiff's back surgery, imagining, and exams indicated he was still able to do less demanding work, and both Drs.' statements keeping Plaintiff out of work were clearly temporary and "did not correspond with [Plaintiff's] positive response to surgery and newer exams" (Tr. 56).

Dr. Heather Gessling, Plaintiff's primary care physician, was also afforded *little* weight (Tr. 56). The ALJ noted Dr. Gessling "cited minimal objective evidence in support" of her claims, and "her assessment did not correspond with her exams showing largely normal extremities and ambulation, [Plaintiff's] limited mental health treatment, or his reported ability to lift up to 10 pounds" (Tr. 56). The ALJ concludes by saying it appeared Dr. Gessling's opinion was based on Plaintiff's subjective allegations, and the opinion of Dr. Abernathie merits greater weight (Tr. 56). The ALJ may give less deference to an opinion based upon a claimant's subjective complaints rather than objective medical evidence. *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). The ALJ provided "good reasons" for concluding Dr. Gessling's opinion

13

was entitled to little weight, including Dr. Gessling's minimal citations to objective medical evidence to support of her conclusions, and instead relying on subjective testimony from Plaintiff.

The ALJ affords *little* weight to the opinions of Dr. Steven Street, a pain management specialist, who stated in December 2016, Plaintiff had difficulty sitting or standing for more than 20 minutes (Tr. 56-57). The ALJ concluded this assessment was "not fully supported by the [Plaintiff's] stable findings on his post-operative medical imaging, exams, and conservative care," and appears to be based on Plaintiff's "subjective reports" (Tr. 57). The ALJ provided "good reasons" for discounting Dr. Street's opinion, namely the conclusion was in contrast to Plaintiff's overall medical evidence.

James England, Jr., a vocational rehabilitation expert, also submitted a report which was considered by the ALJ. The ALJ notes Mr. England is not an acceptable medical source, but his opinion was considered by the ALJ and afforded *little* weight (Tr. 56). Mr. England opines Plaintiff is totally disabled, which the ALJ discounts given Plaintiff's other medical records and prior work abilities, stating the ALJ believes Mr. England relied on Plaintiff's subjective reports (Tr. 56).

The ALJ is required to "give good reasons" for the weight given to a treating sources' medical opinion. 20 C.F.R. § 404.1527(c)(2). As detailed above, the ALJ provided reasons for affording certain weight to the opinions of the providers or experts, including stating certain opinions were inconsistent with the medical records and appeared to be based on Plaintiff's subjective complaints rather than concrete medical evidence. By considering each provider and explaining "good reasons" for affording certain opinions limited or little weight, the ALJ correctly evaluated the opinions of treating physicians.

In his brief, Plaintiff contends the overall medical record supports a different RFC determination than the ALJ, however, a "decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). Accordingly, substantial evidence supports the ALJ's determination of Plaintiff's RFC limiting him to sedentary work with sit/stand option allowing a change in position every 30 minutes for a few minutes at a time while remaining at the work station (with no loss of production).

The ALJ properly evaluated the entire medical record, as well as testimony from Plaintiff, to conclude Plaintiff's subjective complaints of pain and limitations were not entirely consistent with the medical records. The ALJ also provided an adequate medical basis for a determination of Plaintiff's RFC when she evaluated the entire medical record, including Plaintiff's testimony, and evaluated the medical records of Plaintiff's treating physicians. Accordingly, substantial evidence supports the ALJ's conclusions regarding Plaintiff's RFC.

## V. CONCLUSION

For the reasons set forth above, the Court finds substantial evidence on the record, as a whole, supports the Commissioner's decision Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

15

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 11th day of September, 2019.

                                                                **E. RICHARD WEBBER**
                                                                 **SENIOR UNITED STATES DISTRICT JUDGE**